## LEE GIM BOR v. FERRARI.
### No. 2586.

Circuit Court of Appeals, First Circuit.
Jan. 20, 1932.

Thomas D. Lavelle, of Boston, Mass., for appellant.

George B. Lourie, Asst. Atty. Gen. (Joseph E. Warner, Atty. Gen., and Stephen D. Bacigalupo, Asst. Atty. Gen., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Massachusetts dismissing a petition for a writ of habeas corpus and remanding the petitioner to custody.

February 21, 1930, Charles B. McLaughlin, district attorney for the county of Bronx in the state of New York, applied to the Governor of that state for a requisition upon the Governor of the State of Massachusetts for James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe), stating that he was indicted in the county of Bronx. for the crime of murder in the first degree, and is a fugitive from the justice of the state and is now in the state of Massachusetts "as appears from the annexed affidavit of Eva Wong, a respectable person who is entitled to credit"; that the crime charged is the commission of a felony under section 1044 of the Penal Law of the state (Consol. Laws N. Y. c. 40); that attached to his application were certified copies in duplicate of the indictment against the fugitive, duplicate original warrants issued for his arrest, and duplicate original returns thereto; and that the "several sets of papers in duplicate herein have been compared with each other, and are, in all respects, exact counterparts."

February 24, 1931, the Governor of New York issued a demand upon the Governor of Massachusetts in which he certified that the papers annexed thereto and required by the statutes of the United States were authentic and duly authenticated in accordance with the laws of that state; and stated that it appears by said papers "that James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe), stands charged with the crime of murder in the first degree, which I certify to be a crime under the laws of this state, committed in the County of Bronx, in this state; and it having been represented to me that he has fled from the justice of this state, and may have taken refuge in the state of Massachusetts,

"Now, therefore, pursuant to the provisions of the Constitution and the laws of the United States in such case made and provided, I do hereby require that the said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) be apprehended and delivered to John P. Cooke, who is hereby authorized to receive and convey him to the State of New York, there to be dealt with according to law."

March 17, 1931, the Governor of Massachusetts issued his warrant, in which he stated:

"Whereas, It has been represented to me by the Governor of the State of New York that James G. Hay, alias Jimmy Gee, alias

Lee Gim Bor (indicted as John Doe) stands charged in said State with the crime of murder in the first degree which the Governor of the State of New York certifies to be a crime under the Laws of said State, committed in the county of Bronx in said State, and that said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) is a fugitive from the justice of said State and has taken refuge in this Commonwealth and the Governor of the State of New York having, pursuant to the Constitution and Laws of the United States, demanded of me that I shall cause the said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) to be arrested and delivered to John P. Cooke, who is the agent of the Governor of the State of New York and is duly authorized to receive the said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) into his custody and convey him back to the State of New York:

"And whereas, the said representation and demand are accompanied by certain documents whereby the said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) is shown to have been duly charged with the said crime and to be a fugitive from the justice of the State of New York, and to have taken refuge in this Commonwealth, which documents are duly certified by the Governor of the State of New York to be authentic and authenticated:

"Wherefore, you are required to arrest and secure the said James G. Hay, alias Jimmy Gee, alias Lee Gim Bor (indicted as John Doe) wherever he may be found within this Commonwealth, and afford him such opportunity to sue out a writ of Habeas Corpus as is prescribed by the laws of this Commonwealth, and thereafter deliver him into the custody of the said John P. Cooke to be taken back to the State of New York from which he fled, pursuant to the said requisition, etc."

Accompanying the demand was a copy of the indictment found in the Supreme Court by the grand jurors for the county of Bronx, which appears to have been filed in that court on September 5, 1930, reading as follows:

"The Grand Jury of the County of Bronx, by this indictment, accuse Thomas Wong, James Blankenship, John Doe and Richard Roe, the names John Doe and Richard Roe being fictitious, the true names being unknown to the Grand Jury of the Crime of Murder in the First Degree, committed as follows:

"The said Thomas Wong, James Blankenship, John Doe and Richard Roe acting in concert with each other, late of the Borough of Bronx of the City of New York, in the County of Bronx aforesaid, on the 28th day of August in the year of our Lord one thousand and nine hundred and thirty, at the Borough and County aforesaid, with force and arms, in and upon one Sing Foo, in the peace of the said People then and there being wilfully, feloniously and of their malice aforethought did make an assault, and him the said Sing Foo, with certain blunt instruments and weapons * * * which they * * * in their right hands then and there had and held, in and upon the head and body of him, the said Sing Foo, * * * did beat, strike, stab, cut and wound, giving unto him, the said Sing then and there with the blunt instruments and weapons aforesaid, in and upon the head and body of him, the said Sing Foo, one mortal wound of the breadth of one inch, and of the depth of six inches, of which said mortal wound him the Said Sing Foo, at the Borough and County aforesaid, from the day first aforesaid, in the year aforesaid until the 29th day of August, in the same year aforesaid, did languish and languishing did live, and on which said last mentioned day he, the said Sing Foo at the Borough and County aforesaid, of the said mortal wound did die. * * * *"

The clerk of the Supreme Court certified that he had compared the above copy of the indictment with the original and that it was a true copy.

As to the affidavit of Eva Wong, referred to in the application of the district attorney as annexed thereto, the record fails to show whether it was or was not included in the New York papers and presented to the Governor of Massachusetts. It was not offered in evidence in this case.

The petition for the writ of habeas corpus was filed on March 23, 1931. In it the petitioner complains that he is illegally imprisoned in violation of the Constitution and laws of the United States relating to the rendition of fugitives from justice, and held by virtue of the warrant issued by the Governor of Massachusetts, for the purpose of being returned to New York, for the following reasons, among others: (1) That the certified copy of the indictment accompanying the demand is not an indictment of your petitioner; (2) that the documents accompanying the demand were not properly authenticated by the Governor of New York; (3) that the Governor of Massachusetts in issuing his warrant acted upon papers received from the Governor of New York or statements

therein that were not legally competent or sufficient to justify such action; and (4) that he is not the John Doe mentioned in the indictment or warrant.

The respondent, in his answer and return to the petition, sets out that he was an officer of the state of Massachusetts authorized to serve warrants in criminal cases; that he held the petitioner under and by virtue of the lawful warrant of the Governor of Massachusetts as a fugitive from the justice of the state of New York, to be returned to New York; that said warrant was duly and lawfully served and the petitioner arrested thereon; that by virtue of said service and arrest the petitioner is now lawfully held and detained in the custody of the respondent to await full execution of said warrant; and that the petitioner so held under the warrant is the identical person named therein as the alleged fugitive. In all other respects the answer denied the allegations of the petition.

The petitioner filed a traverse to the answer and return in which he denied that he was in the lawful custody of the respondent pursuant to a lawful warrant of the Governor of Massachusetts; denied that the warrant was sufficient to justify the respondent arresting him or keeping him in custody or in delivering him to the agent of the state of New York; and further answering, the petitioner alleged that the warrant was issued without authority of law in that (1) the demand of the Governor of New York was not and is not accompanied by sworn evidence that he was a fugitive from justice as required by section 11, c. 276, G. L. Mass., or by any other legal, sufficient, and competent evidence; and (2) that the documents accompanying the demand are not properly authenticated.

A hearing of the cause was had before the District Court on April 13, 1931, at which time the court in substance and effect ruled that the demand of the Governor of New York and the papers accompanying it were legal and sufficient; that the Governor of Massachusetts was warranted in finding that the petitioner was a fugitive from justice and in issuing the warrant for the arrest, detention, and return of the petitioner to New York; and evidence being submitted before him as to whether the petitioner was a fugitive from justice and the person demanded, found that he was.

In the assignment of errors the petitioner complains, among other things, that the court erred (1) in ruling that he was lawfully restrained of his liberty and in remanding him to the custody of the respondent; (2) in ruling and finding that he was the identical person sought and demanded by the requisition; (3) in ruling that the Governor of New York was justified in inserting the name of Lee Gim Bor in his requisition, the indictment returned by the grand jurors not setting forth that Lee Gim Bor had been indicted; and (4) in admitting the testimony of Eva Wong, which was done subject to exception.

The only papers that appear in this record to have been introduced in evidence at the trial were those from the state of New York, to wit, the application of the district attorney of Bronx county to the Governor of New York, the demand of the Governor of New York on the Governor of Massachusetts, and the John Doe indictment. The petitioner excepted to the admission of the above papers. His exception to the application and the demand was that they were an attempt to amend the indictment against the person described as John Doe by adding thereto the words "James G. Hay, alias Jimmy Gee, alias Lee Gim Bor" as descriptive of the person charged in the indictment, whom they were seeking to extradite, and as a means of identification.

The removal is sought under section 5278 of the Revised Statutes (U. S. C. title 18, § 662 [18 USCA § 662]), enacted to give effect to article 4, § 2, of the Constitution.

In the indictment the grand jury described the crime of murder in the first degree and particularly described the persons charged as "Thomas Wong, James Blankenship, John Doe and Richard Roe, the names John Doe and Richard Roe being fictitious, the true names being unknown to the grand jury." It appears that Thomas Wong and James Blankenship have been arrested, tried, and convicted, so that the indictment stands as though it accused John Doe and Richard Roe, the names being fictitious, the true names being unknown to the grand jury; and the question is whether such an indictment is sufficient to authorize the issuing of a warrant by the Governor of Massachusetts within the meaning of section 5278 of the Revised Statutes, for the arrest, detention, and removal of James G. Hay, alias Jimmy Gee, alias Lee Gim Bor, to New York, as being the person charged with the crime there set out?

Section 5278 of the Rev. St. (18 USCA § 662), regulating extradition proceedings, provides: "Sec. 5278. Whenever the executive authority of any State * * * demands any person as a fugitive from justice,

of the executive authority of any State * * * to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State * * * charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State * * * from whence the person so charged has fled, it shall be the duty of the executive authority of the State * * * to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. * * * "

According to the specific language of the section, the executive of the state of refuge is required to cause the fugitive to be arrested and returned to the jurisdiction of the executive making the demand if the executive making the demand "produces a copy of an indictment found * * * charging the person demanded with having committed treason, felony, or other crime" in the state "from whence the person so charged has fled."

The requirements of this provision are not met if the indictment does not charge the person demanded with having committed one of the class of crimes named; and unless the indictment names or describes the person demanded so that he may be identified, no warrant of arrest should or can properly issue. The word "indictment," as there used, means the finding of a grand jury under its official oath, duly returned into court, charging a person with the commission of a crime known to the law, and so naming or describing him as that he may be named or described in the demand and particularly named or described in the warrant issued for his arrest. Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849; Ex parte Hart (C. C. A.) 63 F. 249, 259, 28 L. R. A. 801.

■ The indictment presented by the Governor of New York for action by the Governor of Massachusetts does not purport to charge the petitioner with the crime of murder, either by name or by such description as that he might be identified by it. It does not even describe the person the grand jury had in mind, if it had any one, as of the Chinese race, whether male or female, or give his or her occupation, or where employed, or where his or her home was other than it was in the borough of Bronx of the city of New York. In short, the names John Doe and Richard Roe being expressly declared to be fictitious in the indictment itself, the indictment would seem not to stand differently than it would had the names been stricken out. In this situation we are of the opinion that the indictment did not furnish adequate support for the issuance of the warrant for the arrest, detention, and delivery of the petitioner to the New York authorities, and that the warrant was unauthorized. Commonwealth v. Crotty, 10 Allen (Mass.) 403, 87 Am. Dec. 669; West v. Cabell, 153 U. S. 78, 14 S. Ct. 752, 38 L. Ed. 643; Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849.

We are not called upon to decide whether, if the New York executive in making his demand had furnished, in addition to this John Doe indictment, an affidavit stating facts of the affiant's own knowledge, to the effect that the petitioner was the person intended to be charged by the grand jury in the indictment, the demand would have been sufficient, for no such affidavit was furnished with the indictment. It would seem, however, that it would not be sufficient; that the intention of the grand jury as to whom they intended to indict is to be determined from the language of the indictment itself.

■ Nor is it necessary to consider whether, if the John Doe indictment had been amended or supplemented by an order of the court in the New York tribunal where the indictment was pending, without being returned for amendment to the grand jury that found it, by making it run against the petitioner, describing him by name or other designation by which he could be readily identified, it would have been a sufficient basis for the issuance of a warrant against the petitioner, for no such amendment or addition as permitted by the statutes of that state was had, or is claimed to have been had before the demand relied on was made. The law of New York does not authorize a district attorney to amend, supplement, or add to an indictment in his application or the Governor of New York to do so in his requisition (N. Y. Code of Criminal Procedure, §§ 293, 294), as was apparently here attempted. See People v. Johnson, 104 N. Y. 213, 216, 10 N. E. 690; People v. Jackson, 111 N. Y. 362, 369, 19 N. E. 54; People v. Petrea, 92 N. Y. 128, 145; People v. Coombs, 36 App. Div. 284, 298, 55 N. Y. S. 276; Bishop Cr. Pro. (4th Ed.) § 708.

We have been unable to find a case presenting a like situation where the extradition provisions of section 5278, Rev. St. (U. S. C. title 18, § 662 [18 USCA § 662]), were involved; but a similar situation has arisen under section 1014 of the Revised Statutes (U. S. C. title 18, § 591 [18 USCA § 591]), where an offender against the laws of the United States was indicted in the district wherein the offense was committed, and his removal for trial thereon was sought in the district into which he was alleged to have fled. Duffy v. Keville (D. C.) 16 F.(2d) 828. That case arose in the Massachusetts district. The facts were as follows: An indictment was returned in the Federal District Court for New York, charging a number of persons with conspiracy, one of them being "Jane Duffy, the name Jane being fictitious." This was the only description of this particular defendant; no residence or address was given and there was no further description of the person named. With this indictment a deputy marshal in the Massachusetts district swore out a complaint before the United States commissioner, representing that "'Jane Duffy, the name Jane being fictitious,' was in this district, and was a fugitive from justice in the Southern District of New York." Upon this complaint a warrant was issued by the commissioner describing the party to be arrested according to the description in the indictment, and the petitioner was arrested and taken before a commissioner. The petitioner refused to plead to the complaint. At the hearing a witness testified that, before the indictment was returned, the petitioner had stated to him that she was concerned in the transaction on which the indictment, subsequently found, was based; and that he had so testified before the federal grand jury in New York, stating that he knew her only as Mrs. Duffy. On this evidence the commissioner ruled that a prima facie case was made out identifying the petitioner as the person named in the indictment and held her for removal. Habeas corpus proceedings were then brought. It was found that the petitioner's name was Mary Duffy; that she was never known by any other name; and that she resided in Fairhaven in the Massachusetts district. It was held that the indictment must describe the accused sufficiently so that he or she could be identified. Judge Morton in his opinion said the indictment shows "on its face that it does not describe any particular person"; that it "is equally applicable to every woman named 'Duffy' residing anywhere in the world." He also held that "the patent in-

definiteness of such an indictment cannot be cured by evidence that a certain person was in fact meant"; that "a person cannot be removed to another district except upon evidence that he or she is there charged with crime"; and that the indictment "contains no charge against this petitioner; it supports no finding that she is accused of crime"; and ordered the petitioner discharged. See United States v. Doe (D. C.) 127 F. 982.

In view of the conclusion reached it is unnecessary to consider the other questions raised.

Since this case was argued before us, it has come to our attention that, subsequent to the issuance of the warrant of arrest by the Governor of Massachusetts, a new requisition by the Governor of New York has been made upon the Governor of Massachusetts, accompanied by a new indictment returned by the grand jury for the county of Bronx on the 27th day of March, 1931, which specifically charges "James G. Hay, otherwise known as Jimmy Gee, otherwise known as Lee Gim Bor, acting in concert with one Thomas Wong and one James Blankenship" with the crime of murder, on August 28, 1930, of Sing Foo; and that on the back of said indictment, it is stated in substance that the indictment of September 5, 1930, the one relied on in this case, so far as it relates "to the defendant John Doe mentioned" therein, has been superseded by the new indictment of March 27, 1931. It would seem, therefore, that the Governor of New York and the other New York authorities had evidently reached the conclusion that the requisition of February 24, 1931, and the accompanying indictment of September 5, 1930, were defective and insufficient.

Whether the new requisition and indictment have been acted upon by the Governor of Massachusetts and a new warrant issued under which the petitioner is held, we are not informed. If it has, the question presented has become moot. If the Governor of Massachusetts has issued a warrant on the later requisition and indictment, good faith required the court should have been so informed.

The case is remanded to the District Court, with directions to that court to discharge the petitioner.

WILSON, Circuit Judge (concurring in result).

I concur in the result of the majority opinion, but I do not fully concur in the reasoning, as it seems to me by necessary in-

ference from the language of the opinion, it holds that an indictment, in order to comply with section 5278 of the United States Revised Statutes (18 USCA § 662), must comply with the Fifth Amendment to the Federal Constitution as interpreted in Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849; Ex parte Hart (C. C. A.) 63 F. 249, 28 L. R. A. 801, or with an indictment at common law. It fails to recognize that the Fifth Amendment or the rules followed in the federal courts as to the sufficiency of indictments do not control the criminal procedure in the states.

In respect to the methods of charging a person with a crime, the states reserved that prerogative to themselves. As the Supreme Court said In the Matter of Strauss, 197 U. S. 324, 331, 25 S. Ct. 535, 536, 49 L. Ed. 774: "Under the Constitution each state was left with full control over its criminal procedure." And as the Supreme Court also said in Pierce v. Creecy, 210 U. S. 387, 404, 28 S. Ct. 714, 719, 52 L. Ed. 1113, in defining the word "charged" as used in the Constitution and section 5278: "Doubtless the word 'charged' was used in its broad signification to cover any proceeding which a state might see fit to adopt, by which a * * * formal accusation was made against an alleged criminal."

In other words, the issue before this court on habeas corpus proceedings in extradition cases is not whether the indictment conforms to the rules of criminal proceedings practiced in the federal courts, but whether the alleged fugitive has been charged with an offense in accordance with the constitution and laws of the demanding state.

Ex parte Hart, which seems to require that an indictment shall comply with the practice in federal courts, has never been followed in any later case. On the contrary, the cases cited above indicate that it is to the state Constitution and laws to which we must turn for tests in the matter of extradition, and if the charge by indictment or affidavit is sufficient under the laws of the demanding state to warrant an arrest in that state, it is sufficient on which to base extradition, Webb v. York (C. C. A.) 79 F. 616, 621; In re Reggel, 114 U. S. 642, 651, 5 S. Ct. 1148, 29 L. Ed. 250; Pearce v. Texas, 155 U. S. 311, 313, 15 S. Ct. 116, 39 L. Ed. 164, assuming, of course, there is no violation of the Fourteenth Amendment.

It is, of course, apparent that the indictment as found by the grand jury in this case was not sufficient on which to issue a warrant for an arrest, but a state in liberalizing its criminal procedure—of which there is now a persistent demand—may provide by statute, if not inconsistent with its Constitution, in the case of a person indicted under a fictitious name, that if his true name is later discovered and entered on the records of the court, an arrest and prosecution may follow. Chapter 277, section 19 of the Gen. Laws of Massachusetts is an instance; and if in the case of Com. v. Gedzium, 259 Mass. 453, 156 N. E. 890, after his true name was discovered and had been entered on the records of the court, I think an authenticated copy of the indictment and of the record of the court would have been sufficient on which to have obtained his extradition, if he had been a fugitive from justice.

I do not agree, as is intimated in the majority opinion, that any attempt was made in this case to amend the indictment by the district attorney, or that amendments under sections 293 and 294 of the New York Code of Criminal Procedure, could have any bearing on extradition proceedings. These sections refer only to amendments during the trial, but whether the district attorney attempted to insert the true name of the respondent in this case in "subsequent proceedings" after the indictment, in accordance with section 277 of the New York Code of Criminal Procedure, or whether an arrest of the petitioner could now be had in New York on this indictment, is not made clear on the record in this case. For this reason I concur in the result.