COMMONWEALTH of Pennsylvania,
Appellant

v.

Stephen LAVENTURE, Appellee.

Superior Court of Pennsylvania.

Submitted Jan. 26, 2004.

Filed July 27, 2004.

Reargument Denied Oct. 8, 2004.

Mary B. Seiverling, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

MaryJean Glick, Lancaster, for appellee.

Before: STEVENS, McCAFFERY, and OLSZEWSKI, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 In this appeal, we are asked to determine whether a "John Doe" criminal complaint and warrant are sufficient to toll a statute of limitations when the complaint and warrant were amended within approximately one week of issuance to reflect the actual identity of the alleged perpetrator. Appellant, the Commonwealth of Pennsylvania, appeals the order entered in the Court of Common Pleas of Lancaster County which dismissed a criminal complaint against Appellee, Stephen Laventure, because the trial court deemed the complaint and warrant at issue untimely. Pennsylvania case law has not yet adequately addressed the issue of how to assess the constitutional sufficiency of "John Doe" warrants. We believe this case presents an opportunity for this Court to adopt a clear standard, one which will utilize a practical approach which considers both what the Commonwealth knew or should have known at the time of the issuance of a "John Doe" criminal complaint and warrant, as well as whether the complaint and warrant were subsequently amended in a timely fashion, due to a rapidly-developing investigation. We hold that the criminal complaint and warrant filed were sufficiently specific, under the facts and circumstances in this case, to toll the applica-

ble statutes of limitation. Accordingly, we reverse the trial court's order and reinstate the criminal complaint against Appellee.

¶ 2 The salient facts and procedural history are as follows. On August 2, 1997, a fire was intentionally set at a structure formerly operated as a business known as "Instant Amish", located at 3452 Old Philadelphia Pike, Intercourse, Lancaster County, Pennsylvania. In spite of an intense investigation including interviews with insurance agents, arson experts and individuals familiar with the particular business in question, the Commonwealth's investigation only began to bear fruit in early May 2002, when one Christopher J. Kluge came forward to authorities. Kluge confessed that he had poured a flammable substance within the structure and had then left the rear door open so that a white male in his thirties, known only to him as "Steve", could torch the structure. Kluge also revealed that his former business partner, Russell D. Shope, had directed him to take this action so that they could collect insurance. Further, Kluge witnessed Shope place five hundred dollars in the business cash register as advance payment for "Steve" to set the fire.

¶ 3 Subsequently, on July 29, 2002, the Commonwealth issued a criminal complaint and warrant for Christopher J. Kluge, Russell D. Shope and Appellee, John Doe "Steve." The Commonwealth set forth all the information it had concerning "Steve", including his approximate age and race. Within mere days thereafter, and just as soon as the information became known as a result of their rapidly-developing investigation, the complaint and warrant were amended to reflect Appellee's full name, Stephen Laventure. In addition, the complaint and warrant contained Appellee's location, as the Commonwealth had learned that Appellee was then

an inmate in a Florida correctional institution.

¶ 4 On October 23, 2002, Appellee arrived in Pennsylvania from Florida pursuant to a detainer which the Commonwealth filed under the Interstate Agreement on Detainers. Subsequently, Appellee filed a Motion to Quash Criminal Complaint for Failure to Timely File Under 42 PA.C.S.A. § 5552. The parties argued this motion on July 7, 2003, after which the trial court granted Appellee's motion on the basis that the statute of limitations had expired prior to the *amendment* of the criminal complaint and warrant. The trial court dismissed the criminal complaint against Appellee as a consequence, and the instant appeal followed.

¶ 5 The Commonwealth raises the following issues for our review:

1. DID THE TRIAL COURT ERR IN DISMISSING THE CASE UNDER 42 PA.C.S. § 5552 WHERE THE COMMONWEALTH COMMENCED PROSECUTION WITHIN FIVE YEARS FROM COMMISSION OF MAJOR OFFENSES BY FILING A JOHN DOE COMPLAINT WITH THE BEST AVAILABLE DESCRIPTION OF THE DEFENDANT AND THE WARRANT WAS EXECUTED WITHOUT UNREASONABLE DELAY AFTER THE FULL NAME AND LOCATION OF THE DEFENDANT WAS ASCERTAINED BY THE COMMONWEALTH?

2. DID THE TRIAL COURT ERR WHEN IT HELD THAT THE PERIOD OF LIMITATION CONTINUED TO RUN DURING THE TIME WHEN THE DEFENDANT WAS CONTINUOUSLY ABSENT FROM THE COMMONWEALTH? [1]

(Commonwealth's Brief at 3).

¶ 6 We begin by noting that the Commonwealth has raised questions of law in this appeal and, therefore, our standard of review is *de novo,* and the scope of our review is plenary. *See Commonwealth v. Cruz,* 355 Pa.Super. 176, 512 A.2d 1270, 1270 (1986).

¶ 7 It is beyond cavil that only the filing of a valid complaint or the issuance of a valid warrant is sufficient to toll the statute of limitations. *See Commonwealth v. Cardonick,* 448 Pa. 322, 330, 292 A.2d 402, 406–407 (Pa.1972). While the Fourth Amendment to the United States Constitution requires that "no warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing...the person...to be seized", Pennsylvania specifically allows the Commonwealth to issue criminal complaints against unidentified defendants where the complaints contain "a description of the defendant as nearly as may be." *See* Pa. R.Crim.P. 504(2).[2] The crucial question is how to determine what constitutes a description "as nearly as may be".

¶ 8 Some jurisdictions have strictly interpreted the constitutional requirement for specificity in warrants. *See United States v. John Doe a/k/a/ Ed,* 703 F.2d 745 (3d Cir.1983) (holding warrant which described defendant as only "John Doe a/k/a/ Ed" to be constitutionally defective); *United States v. Mahoney,* 712 F.2d 956 (5th Cir.1983) (holding warrant issued for "John Doe a/k/a Dennis" was not constitutionally sufficient); *People v. Montoya,* 255

---

1. Due to our disposition of the Commonwealth's first issue, it is unnecessary for us to address its second issue.

2. In addition, Section 8 of Article 1 of the Pennsylvania Constitution provides "no warrant to...seize any person or things shall issue without describing them as nearly as may be...." Pa. Const. Article 1, § 8.

Cal.App.2d 137, 63 Cal.Rptr. 73 (1967) (holding description "white male adult, 30 to 35 years, 5′10″ 175 lbs. dark hair, medium build" did not pass constitutional muster). Other jurisdictions have allowed more latitude as to the elusive quantum of information sufficient to satisfy the Fourth Amendment's specificity requirement, recognizing the fluid nature of criminal investigations. *See United States v. Ferrone*, 438 F.2d 381 (3d Cir.), *cert denied*, 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971) (holding warrant which contained the description "John Doe, a white male with black wavy hair and stocky build observed using the telephone in Apartment 4–C, 1806 Patricia Lane, McKeesport, Pennsylvania" was constitutionally sufficient); *United States v. Doe*, 401 F.Supp. 63 (E.D.Wis.1975) (holding indictment which included alias "Leo" or "Leonard" as well as specifics including race, sex, age, height, weight, hair color, eye color and peculiar facial characteristics was constitutionally valid).

■ ¶ 9 A plenary review of the relevant case law reveals that most courts have employed a case-by-case approach when assessing whether an individual warrant is constitutionally sufficient. We find the practical approach taken in *United States v. Espinosa*, 827 F.2d 604 (9th Cir. 1987) to be particularly instructive. There, the court emphasized the relevance of determining what actual information was available to law enforcement *at the time the warrant was issued* for purposes of assessing the sufficiency of a "John Doe" warrant. It was also important to the *Espinosa* court that the defendant had made efforts to conceal his identity. Where the warrant contained a description

of the alleged perpetrator and was accompanied by affidavits which specified his residences and vehicles, the *Espinosa* court did find sufficient constitutional specificity in light of what information was available *at the time the warrant was issued*. By analogy, we must look to what information the Commonwealth has in its possession at the time "John Doe" complaints are filed or warrants are issued.

■ ¶ 10 Therefore, we are adopting a standard which assesses the unique circumstances present in each case. Specifically, we will apply a two-pronged analysis to determine whether a "John Doe" complaint or warrant is constitutionally sufficient: (1) did the Commonwealth set forth all information it knew or should have known in the initial "John Doe" complaint or warrant; and (2) was specific, identifying information obtained later as the result of diligent investigation added to the complaint or warrant within a reasonable *amount of time?* [3] *If these requirements are satisfied, the complaint or warrant at issue should be deemed to constitute a description of the defendant "as nearly as may be" under the Pennsylvania Constitution and Pa.R.Crim.P. 504(2) as well as a sufficiently particular description under the Fourth Amendment.*

¶ 11 Instantly, the Commonwealth's investigation began to bear fruit only a few months before the statute of limitations ran, when one of Appellee's co-defendants, Christopher Kluge, finally came forward to authorities in May 2002 regarding the 1997 arson. Kluge was only able to identify Appellee as "Steve, white male, 30's." Based on this fresh but belatedly-offered information, which was *all* the relevant information the Commonwealth had at that

---

**3.** It is important to note that the promulgation of such a standard should not be seen by the Commonwealth as a green light to file "John Doe" complaints or warrants solely to toll statutes of limitation where no information is known and a rapidly-developing investigation is not taking place.

time, on July 29, 2002, the Commonwealth filed a criminal complaint and the District Justice issued a "John Doe" warrant which contained the name "Steve" as well as the race and approximate age of Appellee.[4] Unbeknownst to the Commonwealth at that time, Appellee had fled to Florida several years earlier, and had been incarcerated there since August 2000. When their ongoing investigation uncovered this circumstance, within approximately one week after the issuance of the initial "John Doe" warrant, *and as soon as the information became known to them,* the Commonwealth, on August 8, 2002, amended the warrant and the complaint to include Appellee's full name and location. In this particular situation, the Commonwealth acted promptly in both the filing of the initial complaint and issuance of the initial warrant and the subsequent amendment thereof. Indeed, during argument the trial court stated "I am not in any way suggesting that the Commonwealth did not act in an appropriate fashion in terms of acting promptly upon the information received. I think the Commonwealth did what it could given the circumstances...." (Transcript of Argument regarding Motion to Quash Criminal Complaint, 7/7/03, at 15).

¶ 12 Applying the requirements of the aforementioned two-prong analysis, the instant complaint and warrant were constitutionally valid, as the Commonwealth set forth all the information it had in the initial complaint as soon as they discovered that information, and thereafter amended the complaint and warrant to reflect the actual identity of the "John Doe" just as soon as their ongoing investigation revealed that information. Under this clear standard, the relevant statutes of limitation should have been tolled by the filing of the initial complaint. Indeed, to conclude otherwise would allow Appellee to benefit from his own efforts to elude authorities, and it would effectively thwart his prosecution merely because roughly one week elapsed between the timely filing of the initial "John Doe" complaint and warrant and the prompt substitution of the amended complaint and warrant containing Appellee's full name and location. Where, as here, the Commonwealth diligently commenced the instant action within the statutorily prescribed period, we do not believe that the interests of justice would be served by such a result.

¶ 13 Further, we find this practical approach particularly apt in the context of issues involving the tolling of statutes of limitation. It is well-settled that the purpose underlying a statute of limitations is to limit the amount of time an individual is exposed to criminal liability because of the inherent difficulties in defending against a criminal charge where a great deal of time has passed between the commission of the crime and the prosecution thereof, e.g. the death or lack of memory of witnesses. *Cardonick,* 448 Pa. at 332–333, 292 A.2d at 407–408. The use of the above proposed standard on a case-by-case basis would not contravene this rationale, as the criminal case will have actually commenced with the filing of the initial "John Doe" complaint and issuance of the warrant. Es-

---

**4.** The supporting Affidavit of Probable Cause listed the Defendants as: Russell D. Shope, W/M/50, DOB: 8–1–52, of 123 Locust St., Lancaster, PA, Christopher J. Kluge, W/M/26, DOB: 4–25–76, of Hockley Ave, Lebanon, PA and John Doe "Steve", address unknown at this time." Police Criminal Complaint Affidavit of Probable Cause, R.R. 6a–7a. The Affidavit also provides information placing Defendant John Doe "Steve" at the location of a fire at 3453 Old Philadelphia Pike, Intercourse, PA on or about August 2nd or 3rd, 1997. *Id.* Additionally, the Affidavit describes the ongoing investigation leading to the filing of the complaint on July 29, 2002. *Id.*

sentially, the "ball will be rolling" as a result of the initial "John Doe" complaint or warrant, and if a swiftly-developing investigation does not result in the rapid amendment of the initial document to include the subject's actual identity, then the applicable statute of limitations will function ultimately to bar prosecution.

¶ 14 For the reasons set forth above, we reverse the trial court's order dismissing the Commonwealth's criminal complaint against Appellee because we conclude that the statute of limitations *was* tolled with the filing of the Commonwealth's initial complaint. Therefore, the charges brought against Appellee were not time-barred and should be reinstated.

¶ 15 Order reversed and criminal complaint reinstated. Jurisdiction relinquished.

¶ 16 Judge Olszewski files a Dissenting Opinion.

OLSZEWSKI, J., Dissenting:

¶ 1 I find that the Commonwealth did not properly commence its prosecution against appellee because it did not file a valid arrest warrant within the requisite five-year limitations period. Therefore, I respectfully dissent from the majority opinion.

¶ 2 Generally, "a prosecution is commenced either when an indictment is found or an information ... is issued, or when a warrant, summons or citation is issued, if such warrant, summons or citation is executed without unreasonable delay." 42 Pa. C.S.A. § 5552(e). In this case, the Commonwealth commenced its prosecution by issuing a "John Doe" arrest warrant on July 29, 2002, just four days before the five-year statute of limitations expired on August 2, 2002. While the Commonwealth did not delay in executing this warrant, it

did not contain sufficient information to be valid.

¶ 3 It is well settled that only a valid warrant will be sufficient to toll the statute of limitations. *See Commonwealth v. Cardonick*, 448 Pa. 322, 292 A.2d 402, 406–07 (1972). Rule 504(2) of the Pennsylvania Rules of Criminal Procedure permits the Commonwealth to issue a criminal complaint against an unknown defendant if it contains "a description of the defendant as nearly as may be." Pa.R.Crim.P. 504(2). This description requirement is mandated by the Fourth Amendment to the U.S. Constitution, which provides, "no warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing ... the person ... to be seized." U.S. Const. Amend. IV (emphasis added); *Wong Sun v. United States*, 371 U.S. 471, 481 n. 9, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

¶ 4 In this case, the majority concedes that the Commonwealth's arrest warrant, which described appellee as "John Doe 'Steve', address unknown, white male, 30's," did not sufficiently describe appellee at the time it was issued. Only when the Commonwealth amended the warrant after the statute of limitations expired did the description meet constitutional standards.

¶ 5 In effect, the majority has transformed a strict statute of limitations into an amorphous time period. According to the majority, an arrest warrant that does not particularly describe the person to be seized, a defect that would normally invalidate the warrant under the Fourth Amendment, is valid as long as the Commonwealth files it before the statute of limitations expires and then supplements the warrant with the required description some time thereafter. Such a method ignores the very purpose for having a statute of limitations and erodes the due pro-

cess protections provided by the Fourth Amendment.

¶ 6 The majority makes much of the fact that other courts have found arrest warrants valid when the warrant contained as much information about the person to be seized that the government had available to it. But the majority cites no cases in which a court allowed the government to amend a criminal complaint, information, or warrant *after* the statute of limitations expired for the crime. Furthermore, none of arrest warrants in the cases cited by the majority contained a description as deficient as the one filed in this case.

¶ 7 In *United States v. Espinosa*, 827 F.2d 604 (9th Cir.1987), the arrest warrant and accompanying affidavit described the person to be seized as a *Latin* male, approximately 35 years of age, *5'8"/5'10", approximately 200 pounds, black hair,* and *black full beard. Id.* at 607. It also described *the place where the person to be seized could be found. Id.* In *United States v. Ferrone*, 438 F.2d 381 (3d Cir.), cert. denied, 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971), the arrest warrant described the person to be seized as a white male with *black wavy hair* and *stocky build,* and included *the precise location where the person could be found. Id.* at 389. In *United States v. Doe*, 401 F.Supp. 63 (E.D.Wisc.1975), the arrest warrant included the alias of the person to be seized, as well as his race, sex, age, *weight, hair color, eye color, and peculiar facial characteristics. Id.* at 65. The warrants in these cases cite specific identifying characteristics of the person to be seized. The arrest warrant in this case, however, only described the person to be seized as "John Doe 'Steve', address unknown, white male, 30's." As the trial court noted, "according to a Social Security Administration website, in the 1960's and 1970's almost a million individuals were born with the name Steve." Trial Court Opinion, 9/15/03, at 5, n. 8. In my opinion, an arrest warrant for a thirty-something-year-old Caucasian man named Steve living somewhere in the world does not qualify as a particular description of the person to be seized.

¶ 8 While I agree with the majority that we must consider the sufficiency of John Doe warrants on a case-by-case basis, we must also apply the statute of limitations that the General Assembly has mandated for certain offenses. The majority's approach emphasizes the best efforts of the Commonwealth in obtaining a sufficient description of the person to be seized while ignoring the statute of limitations of a particular offense. Such a formula would allow the Commonwealth to routinely file John Doe warrants, with virtually no identifying information in them for the purpose of extending the statute of limitations for an uncertain amount of time.

¶ 9 It is my contention that an adequate description of a person to be seized must be included in a warrant, information, or complaint before the statute of limitations expires. Because the warrant that tolled the statute of limitations in this case did not contain a particular description of appellee, it was not valid, and therefore, the statute of limitations expired on the offense charged. Accordingly, I would affirm the lower court's disposition of this case.